(41 South. 565.)

No. 15,909.

STANLEY v. SCHUMPERT et al.

(May 21, 1906. Rehearing Denied June 18, 1906.)

1. PHYSICIANS AND SURGEONS—NEGLIGENCE—EVIDENCE.

The Two of the defendants were not the owners of, nor connected with the management of the sanitarium at the date of the accident of which plaintiff complains.

Suit against them did not lie. They are not liable.

2. SAME.

The attendant of the sanitarium was not sufficiently careful, and did not follow the prescription. The injury, if any, was very slight. There was pain caused to the patient. Nominal damages allowed.

An attendant in a sanitarium should be careful, and it is the duty of those in charge to compel the nurse to be careful, and not neglect the patient who is under the care of the sanitarium, and to whom it must see, to some extent at least, that medicines are properly administered.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by Mack J. Stanley against T. E. Schumpert and others. Judgment for defendants, and plaintiff appeals. Amended and affirmed.

Pugh, Thigpen & Foster, for appellant. Alexander & Wilkinson, for appellee Dr. T. E. Schumpert. Thomas & Herold, for appellees Doctors Abrahamson and Willis.

BREAUX, C. J. The action is one sounding in damages, which plaintiff in his petition fixes at $5,000.

In May, 1904, plaintiff called on Dr. Dowling, an oculist in the city of Shreveport, to have his eyes treated. The physician suggested that during the treatment he should stay at the Shreveport Sanitarium. His physician prescribed a mild solution to be applied under the direction of a trained nurse. On one of the early days in June of that year one of the nurses of the institution, owing to her carelessness, applied alcohol instead of the mild solution prescribed by the physician.

Plaintiffs avers that he suffered on that account excruciating pain, lost his eyesight, and that now he is entirely blind.

Defendants severed in their defense. Dr. Willis, one of the defendants in an exception, averred that at the time of the accident he was no longer in the Shreveport Sanitarium. Dr. Schumpert also denied all connection with the institution. Dr. Abramson, the other defendant, sets up as his defense that plaintiff had been under the treatment of Dr. Dowling, and that he was admitted in the institution as his patient, and plaintiff's contract with the institution was exclusively for board and lodging, and for the services of a nurse to wait on him under the direction or supervision of his physician; that he had naught to do with the case; that

he was exclusively under the treatment of his physician.

The foregoing is an abbreviated statement of the pleas and counter pleas of plaintiff and defendants.

The case was tried before a jury and decided for defendants. From the verdict and judgment plaintiff appeals.

The plaintiff is a farmer who resides in one of the parishes adjacent to Caddo. He repaired to Shreveport to have his eye treated by Dr. Dowling. Many years ago he accidentally hit his right eye, from the effects of which it was at first diseased and afterward lost its sight entirely. In the year 1900 it was completely blind. He was advised by his physician before named to have his eye removed, for it would only be a question of time when it would cause the loss of the other eye, through sympathetic infection. The eye was not removed. Some time thereafter plaintiff again called on his physician, who found him suffering with ulcer on the cornea of the left eye. It was painful to him. He was exceedingly sensitive to the light. He dreaded it. He could see only a short distance, a few feet. It was at this time that the physician advised him to go to the sanitarium, where he would be better able to take care of his remaining eye, and where he might have it looked after regularly by nurses who would apply the remedies prescribed. He prescribed for him and gave the nurses directions as to what medicines to use; how, and the time to use them.

No other physician treated him. The nurse, under the physician's prescription, only had to drop some solution prepared for the purpose into the plaintiff's eye with an ordinary medicine dropper.

One of the nurses who happened to be in charge of plaintiff's ward undertook to administer the solution. She did not administer the mild solution prescribed. Instead, through negligence, she put the dropper into

117 LA.—9

alcohol and dropped alcohol freely into plaintiff's eye.

The testimony shows that all the bottles were properly labeled. The alcohol caused intense pain, but did not destroy the sight.

When plaintiff testified it appears that he had no ulcer on the left eye. The physician also testified that he had no ulcer on the cornea, and that he could see somewhat better than when he called on him and consulted him before the accident.

| Condition of plaintiff's eyes in 1904, before the accident: | Condition of plaintiff's eyes at the date of the trial: |
|---|---|
| "He suffered from ulceration of the cornea. The eye that he had lost and the remaining eye were greatly inflamed. His pain was excruciating. He could distinguish the fingers of the hand placed before him at about two feet. Ulcer was the cause." | "The ulcer on the cornea of his eye was cured. His eyes were not inflamed, nor were they painful to him. He could see and distinguish the fingers of his physician's hand at a distance of about nine feet. There were spots on his eyes, caused by scars, which very much impeded his vision." |

The defense sets up that it was not possible to inject into the eye as much alcohol as plaintiff contends. That the structure is such that alcohol or any other liquid is admitted in small quantity only. The testimony of witnesses described the cornea of the eye with some particularity. Its mechanism and composition, we will state, is in thickness, as they testified, about the thirty-second part of an inch, and has five layers.

Before closing the statement of facts, it is proper we should state that the testimony shows that an ulcer on the cornea is a diseased condition of the tissues and brings on suppuration, for which alcohol is sometimes prescribed as a remedy.

At the time that plaintiff's eye was examined by the physician, a few days before the accident, the iris of the eye had become involved.

The testimony shows that alcohol is an antiseptic. It is in evidence that the proper application of alcohol consists in dipping the cotton on the applicator into the alcohol, shake it so that there will be no loose alcohol

to fall on the tissues, which should not be touched. It is also in evidence that the application is not scientific which consists in pouring or injecting it into an eye with a medicine dropper.

We leave the statement of facts convinced that the nurse was not very careful, and that it was negligent on her part to apply, as she did, the alcohol, instead of the solution which was intended to ease and soothe the diseased eye.

In deciding, we take up the demand of plaintiff directed against Dr. Willis. The testimony shows that he is not liable. He was not at the time owner or lessee of the sanitarium. He never had charge of plaintiff's case. This ends the suit as to him.

We take up, in the next place, the case against Dr. Schumpert. We have seen that his defense was that he had leased the sanitarium to Dr. Abramson, the other defendant, who as lessee was alone responsible for the management. The nurse had been employed while Dr. Schumpert was in charge of the sanitarium, and the plaintiff had been received at the institution while he was the owner and in charge; but a few days thereafter, before the accident, he leased to Dr. Abramson.

The lease went into effect on the 1st of June. It was after that time that the nurse committed the mistake.

Plaintiff had no reason to be interested in the change from Dr. Schumpert to Dr. Abramson, lessee. No personal consideration entered into the case. Plaintiff had been admitted to the sanitarium to be treated by his own physician, and whether it was in charge of Dr. Schumpert or Dr. Abramson was not a matter in which plaintiff was concerned.

There is a very similar case, viz.: Property had passed from one to another without recording evidence of the fact. The court held that the new owner was liable for the tort.

Plaintiff was not in any way concerned as to the party against whom to bring his action. Goodwin v. Bodcaw Lumber Company, 109 La. 1050, 34 South. 74.

Moreover, plaintiff's contract with the sanitarium was not for any limited time. He was a day patient of the institution, and remained there from day to day.

We do not think that plaintiff has a cause of action against Dr. Schumpert.

Defendant's next contention is that, even if injury had been inflicted by the nurse, yet under the evidence defendant is not liable.

In support of this position, defendants aver that they are not liable for the fault of the nurse, they were not present, and knew nothing of her mistake. In support of that position defendants invoke article 2320 of the Code, which reads as follows:

"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

In the above cases responsibility only attaches when the masters or employers might have prevented the act which caused the damage and not have done it.

The court has been called upon a number of times to interpret that article, and has never taken the restricted view that a defendant is liable only when present and when he could have prevented the act.

We are not inclined to take an extreme view upon the subject. We must say, however, that cases may arise of the master's liability, although not actually present.

It is a presumption that the employer exercises some influence over his employé's and that under that influence employés will not be prone to negligently injure others. That they, nurses, for instance, will show proper care of those placed in their charge, because of the duty to the employer; the performance of which it devolves upon the employer to require.

We can only cite here the different decisions upon the subject, which are a complete answer to the contention of defendant:

Hart v. Railroad Co., 1 Rob. 178; Nelson v. Railroad Co., 49 La. Ann. 491, 21 South. 635; Anderson v. Elder, 105 La. 676, 30 South. 120; Evans v. Lumber Co., 111 La. 542, 35 South. 736.

Defendant's next ground is that plaintiff was not injured by dropping alcohol in his eye.

A careful consideration of the testimony has not enabled us to find that plaintiff had been permanently injured. Not one of the number of physicians who testified, either for plaintiff or for defendant, said that there was probability that the alcohol had destroyed or injured plaintiff's eyesight. Plaintiff's eyesight is no weaker now than it was before the accident. He does not suffer with an ulcer. There are opaque spots on the cornea, but the testimony does not show that they were caused by the alcohol. True, he is nearly blind. But his eyesight has always been weak. While specialists as witnesses did not approve of the manner the alcohol was administered to the eye, they said that the proper application of alcohol to the eye has no effect of an injurious character. Alcohol does not destroy when applied to an eye, even if it be sore.

We do not find that there was injury.

This brings us to the question of plaintiff's suffering.

The plaintiff did not suffer as much as one of the witnesses would have it, although he must have suffered pain for a moment.

A nurse should exert her best endeavors to avoid mistakes of any kind, as they are sometimes attended in the sick room with the saddest consequences.

The only remaining question for decision is whether the sanitarium is liable for the pain caused by the mistake of the nurse, for unquestionably, as before stated, there was pain.

The proprietor of a drug store has been held liable for the mistake of his clerk. The general responsibility of a druggist and of his clerk is greater than are the duties of the nurse. Nonetheless, the functions of the nurse are sufficiently important to render her and her employers liable in damages for inflicting pain negligently. This nurse was employed by the sanitarium and had charge of plaintiff's case in accordance with his contract of employment. She was acting for the sanitarium under the direction of plaintiff's physician. Her duty was to carry out the orders of this physician, and it was the duty of the sanitarium to see that she carried out the orders devolving upon her as a nurse.

The physician could have had another nurse called in her place, but he had no right to discharge her. The management of the sanitarium had the right of control and of discharge.

We think that the plaintiff should recover something for the intense suffering, though momentary, which the negligent mistake occasioned.

It is therefore ordered, adjudged, and decreed that the verdict and judgment are amended by condemning the defendant Dr. Lewis Abramson to pay $25, and as amended the judgment appealed from is affirmed, at defendant's and appellee's (Abramson's) costs in both courts, except as relates to suit and appeal of Drs. Schumpert and Miller; costs as to these to be paid by appellant.